**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAULYS ENRIQUE CHICO-POLO,

    Petitioner,

v.

    CASE NO. 2:06-CV-10184
    HONORABLE GERALD E. ROSEN
    UNITED STATES DISTRICT JUDGE

LINDA M. METRISH,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Daulys Enrique Chico-Polo (petitioner), presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for possession with intent to deliver 650 or more grams of cocaine, M.C.L.A. 333.7401(2)(a)(i); delivery of 225 grams or more, but less than 650 grams of cocaine; M.C.L.A. 333.7401(2)(a)(ii); and possession with intent to deliver less than fifty grams of heroin, M.C.L.A. 333.7401(2)(a)(iv). For the reasons stated below, the petition for a writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. Petitioner's co-defendant, Charlys Ignacio Falkenhagen, was acquitted by the jury at this trial. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which

1

are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> In early 1997, Flint Police Officer Alan McLeod obtained the cooperation of Richard Johnson in an investigation of illegal drug trafficking. Johnson had agreed to cooperate with police for consideration of a reduced federal drug sentence. Johnson identified defendant as someone engaged in illegal drug activity. Johnson knew defendant through his brother, who had been convicted of illegal drug activities with defendant in 1985.
>
> During a conversation between Johnson and defendant, that was recorded by McLeod, defendant indicated that he could obtain a half kilogram or a kilogram of cocaine. Johnson and McLeod arranged for defendant to bring the drugs to Flint. Johnson provided $ 850 to defendant to finance defendant's travel to Flint. This money came from the police. On July 16, 1997, defendant arrived in Detroit from Miami and met Johnson in Fenton, Michigan, at the Best Western Hotel. Prior to meeting defendant at the hotel, Johnson was equipped with an electronic transmitter and was provided $ 100 to rent a hotel room in which defendant and his travelling companion were to stay.
>
> In the hotel room, defendant presented Johnson with over 1200 grams of cocaine. Defendant gave Johnson a quantity of between 300 and 500 grams of cocaine which appears to be payment for a previous $11,000 debt that defendant owed Johnson. The remaining cocaine was to be purchased by Johnson the next day. After leaving the hotel room, Johnson turned over to the police the room key and the cocaine. Johnson informed the police that defendant had more cocaine and heroin in the room. Thereafter, the police went to the hotel room where McLeod attempted to enter using the room key that was given to him by Johnson. McLeod was unable to enter because the door was dead bolted from the inside, so McLeod identified himself as "Willy," and defendant opened the door. The police entered the hotel room and arrested defendant for delivery of cocaine. Following a search of the room, the police located a package of 696 grams of cocaine and twenty grams of heroin.
>
> *People v. Chicopolo,* No. 213984, * 1-2 (Mich.Ct.App. September 26, 2000).

Petitioner's conviction was affirmed on appeal. *Id., lv. den. sub nom. People v. Chicopola,* 465 Mich. 863; 634 N.W. 2d 353 (2001). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Polo,* No. 97-001837-FC

(Genesee County Circuit Court, May 17, 2004). The Michigan appellate courts denied petitioner leave to appeal. *People v. Polo,* No. 260198 (Mich.Ct.App. August 16, 2005); *lv. den.* 474 Mich. 979, 707 N.W. 2d 203 (2005). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Petitioner received ineffective assistance of counsel such that he is entitled to a new trial.
>
> II. Petitioner's arrest in his hotel room was illegal and the cocaine and heroin seized during a search of his hotel room were the fruits of an illegal arrest.
>
> III. The trial court erred by failing to inquire into the dispute between the Petitioner and his attorney after the Petitioner put the court on notice of a dispute.
>
> IV. Petitioner was denied the effective assistance of counsel on his appeal of right.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

3

06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claims # 1, 3, and # 4. Petitioner was not deprived of the effective assistance of counsel.**

The Court will consolidate petitioner's ineffective assistance of counsel claims together for judicial clarity.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to

4

claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602 (6th Cir. 2005).

As part of his first claim, petitioner alleges that his counsel was ineffective for failing to move for the suppression of the evidence seized from petitioner's hotel room as being the fruit of a warrantless arrest and search**.**

The Michigan Court of Appeals rejected petitioner's claim, because there was a "reasonable argument" that the search of the hotel room was valid based on consent given by Richard Johnson. The Michigan Court of Appeals noted that Johnson had rented the hotel room, had retained a key for entry, and had given the key to the police. The Michigan Court of Appeals concluded that petitioner had failed to establish that any motion to suppress would have been successful so as to sustain an ineffective assistance of counsel claim. *Chicopolo,* Slip. Op. at * 3.

Consent to a warrantless search by a person who possesses common authority or any other sufficient relationship to the premises or effect sought to be searched is valid as against an absent, nonconsenting person with whom that authority is shared. *See U.S. v. Matlock,* 415 U.S. 164, 171 (1974). The Supreme Court has defined "common authority or control" as "[the] mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their members might permit the common area to be searched." *Id.* at 171, n. 7.

In the present case, Richard Johnson rented the hotel room, had a key to the

room, and was the sole registered occupant. Under the circumstances of this case, Johnson had the right to use or possess the hotel room and therefore had the ability to consent to the search of the hotel room regardless of petitioner's presence there. The warrantless search was therefore valid. *See United States v. Burns,* 298 F. 3d 523, 542 (6th Cir. 2002). Because Johnson possessed common authority or control over the hotel room and apparently consented to any search by the police, counsel was not ineffective for failing to move to suppress the evidence seized as the result of an illegal search. *See Reese v. United States,* No. 2001 WL 1525337, * 2 (E.D. Mich. October 16, 2001).

Moreover, even assuming that the police did not obtain a valid consent to search the hotel room, the police had the probable cause, based upon petitioner's delivery of cocaine to Johnson, to obtain a search warrant for the hotel room. The "inevitable discovery" doctrine provides that evidence found in an unlawful search may be admitted if the government can show that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Kennedy*, 61 F. 3d 494 (6th Cir. 1995). Because the "inevitable discovery exception" to the exclusionary rule would apply in this case, petitioner suffered no prejudice from counsel's failure to file a motion to suppress and thus, his ineffective assistance of counsel claim fails. *See Jefferson v. Fountain,* 382 F. 3d 1286, 1297 (11th Cir. 2004); *See also Phillips v. Mitchell,* 187 Fed.Appx. 678, 679-80 (9th Cir. 2006); *cert. den. Phillips v. Patrick*, 127 S.Ct. 1155 ( 2007)(any deficiency of defense counsel in failing to challenge a search on the ground that the defendant's mother lacked capacity to consent did not prejudice the defendant, given that the evidence would have inevitably

6

been discovered through legal means).

In the other part of his first claim, petitioner alleges that counsel was ineffective for failing to bring a pre-trial motion to dismiss the charges on the grounds of entrapment. Instead, petitioner's counsel chose to raise a duress defense at trial, based essentially on the same facts that petitioner contends would have supported pre-trial dismissal of the charges on the basis of entrapment. The Michigan Court of Appeals rejected petitioner's claim, finding that trial counsel's decision to pursue a duress defense, rather than an entrapment defense, was a legitimate trial strategy. *Chicopolo,* Slip. Op. at * 3.

Michigan has adopted the objective theory of entrapment. *See People v. Juillet*, 439 Mich. 34, 52-54; 475 N.W.2d 786 (1991). Under an objective theory of entrapment, "[e]ntrapment occurs when the government induces or instigates the commission of a crime by one not ready and willing to commit it, rather than merely providing the opportunity to commit a crime." *See Sosa v. Jones,* 389 F. 3d 644, 647 (6th Cir. 2004)(*citing United States v. Russell*, 411 U.S. 423, 445 (1973)). In Michigan, the defense of entrapment is decided by the judge, not the jury. *See People v. D'Angelo*, 401 Mich. 167, 173-76, 257 N.W.2d 655 (1977),

There are several problems with petitioner's claim. First, although petitioner's trial counsel did not file a pre-trial motion to dismiss based on entrapment, petitioner's co-defendant did move to dismiss the charges against him on the basis that the police had entrapped petitioner. Petitioner testified, against his counsel's wishes, at the co-defendant's entrapment hearing. At the conclusion of the hearing, the trial court judge rejected the idea that petitioner had been entrapped by the police, so as to justify

7

dismissal of the charges against the co-defendant. Because the trial court rejected petitioner's claim of entrapment at the co-defendant's entrapment hearing, petitioner is unable to establish that he was prejudiced by counsel's failure to request a pre-trial entrapment hearing on petitioner's behalf. *Cf. Stephens v. United States,* 14 F. Supp. 2d 1322, 1331-32 (N.D. Ga. 1998)(defense counsel's decision not to pursue an entrapment defense did not prejudice defendant, where the post-conviction court indicated that it would have denied a request for an entrapment instruction given that all the negotiations between the defendant and the confidential informant occurred without any assistance or encouragement from the Government); *Cf. Kett v. United States*, 722 F. 2d 687, 689 (11th Cir. 1984)(counsel's failure to assert entrapment defense at trial not ineffective assistance when the witness' testimony at a pre-trial *in camera* hearing revealed no entrapment).

Moreover, as petitioner admits, trial counsel chose to present a duress defense at trial, in which he essentially raised all of the facts that petitioner claims would have supported an entrapment defense. Trial counsel's decision to raise the issue of entrapment at petitioner's trial under a duress theory was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See e.g. Salem v. Yukins,* 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006).

In his third claim, petitioner contends that the trial court failed to inquire into a possible conflict of interest between petitioner and his counsel after a dispute arose between the two over petitioner's decision to testify at his co-defendant's entrapment hearing, over his counsel's advice.

Prior to trial, counsel filed a motion to withdraw, in which he indicated that he

8

had advised petitioner against testifying at his co-defendant's entrapment hearing. Counsel further indicated that petitioner's testimony at the hearing had compromised his defense in this case, although he did not elaborate on how petitioner's testimony harmed his proposed duress defense at trial. Petitioner likewise wrote two letters to the court and to the Court Administrator, in which he expressed dissatisfaction with his counsel. In these letters, petitioner states, in conclusory fashion, that his counsel had failed to file motions on his behalf, request an entrapment hearing, or "secure exculpatory evidence from witnesses."

According to the trial court's docket entries, the motion was denied on July 13, 1998, although it is unclear whether any record was ever made as to the reasons for the denial.[1] Petitioner now claims that the trial court's failure to engage in any inquiry involving the alleged conflict of interest between petitioner and his counsel entitles him to an automatic reversal of his conviction.[2]

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692. The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So

---

[1] *See People v. Polo,* Genesee County Circuit Court, No.97-001837-FC, Entry # 22 [This Court's Dkt. # 9].

[2] Respondent contends that this claim is procedurally defaulted, because petitioner failed to raise this claim in his appeal of right and failed to show cause and prejudice, as required by M.C.R. 6.508(D), for failing to do so. Petitioner claims that appellate counsel was ineffective for failing to raise this claim on his appeal of right, so as to excuse any procedural default. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would simply be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Because petitioner's third claim is without merit, the Court does not need to resolve the procedural default issue, but will address the merits of the claims instead. *See Coy v. Renico,* 414 F. Supp. 2d 744, 764, n. 5 (E.D. Mich. 2006).

9

are various kinds of state interference with counsel's assistance." *Id.* The *Strickland* court further noted that there was one type of ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice", namely, cases involving an actual conflict of interest that adversely affects counsel's performance. *Id.* This reference was to the Supreme Court's ruling in *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980), where the Supreme Court held that in order to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate that an actual conflict of interest exists that adversely affected his attorney's performance.

To demonstrate a Sixth Amendment violation where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, a defendant must establish that a conflict of interest adversely affected counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 173-74 (2002). The Supreme Court based its decision in *Mickens* in part on the *Cuyler* case, which as noted above, involved a Sixth Amendment violation arising from the joint representation of multiple defendants by a single attorney. The case in *Mickens*, however, did not involve a conflict of interest based upon multiple representation, but rather, successive representation, where the defendant's attorney had previously represented the murder victim in a juvenile court proceeding. Although noting that the *Sullivan* rule had been applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, the Supreme Court noted that the language in *Sullivan* "does not clearly establish, or indeed even support, such expansive application." *Id.* at 175. The

Supreme Court further noted that *Sullivan* and the Supreme Court's earlier case of *Holloway v. Arkansas*, 435 U.S. 475 (1978) "stressed the high probability of prejudice arising from multiple representation, and the difficulty of proving that prejudice." *Id.* However, the Supreme Court in *Mickens* noted that "[N]ot all attorney conflicts present comparable difficulties" and concluded that it remained an "open question" whether *Sullivan* should be extended to cases other than multiple representation. *Id.* at 176.

In the aftermath of *Mickens,* the Sixth Circuit has indicated a reluctance to apply the *Sullivan* rule to conflicts of interest that do not involve multiple representation. In *Smith v. Hofbauer,* 312 F. 3d 809, 817 (6th Cir. 2002), the Sixth Circuit held that a habeas petitioner was not entitled to use *Sullivan's* lesser standard of proof for an ineffective assistance of counsel claim that arose from a conflict of interest other than multiple representation. Other cases have reached similar conclusions. *See Whiting*, 395 F. 3d at 619)(presumed prejudice standard is inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *United States v. Moss,* 323 F. 3d 445, 473, n. 25 (6th Cir. 2003)("As we have discussed, *supra,* the *Mickens* rationale compels our strong hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context"). In this case, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law--one that clearly has not been dictated by prior Supreme Court precedent." *Whiting v. Burt,* 395 F. 3d at 619-20.

This Court concludes that the presumed prejudice standard enunciated in *Cuyler* is inapplicable to petitioner's conflict of interest claim. Instead, the proper standard

would be the *Strickland* standard, in which petitioner would have to demonstrate that he was actually prejudiced by his counsel's alleged conflict of interest. Moreover, if the reasons proffered for the substitution of counsel are insubstantial and the defendant receives competent legal representation at trial, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error. *See U.S. v. John Doe No. 1,* 272 F. 3d 116, 123 (2nd Cir. 2001); *See also United States v. Wilhite,* 108 Fed. Appx. 367, 369-370 (6th Cir. 2004)(applying harmless error standard to the denial of the motion for the substitution of counsel).

Petitioner's conflict of interest claim fails for several reasons. First, although counsel indicated in his motion to withdraw that petitioner's duress defense had been compromised by petitioner testifying at his co-defendant's entrapment hearing, counsel did not specify exactly how petitioner's testimony at this hearing compromised the defense. More importantly, petitioner fails to allege, much less show, that counsel's dissatisfaction with petitioner over his testifying at his co-defendant's entrapment hearing somehow effected his subsequent representation of petitioner at trial. Petitioner's conflict of interest claim fails, because petitioner has provided this Court with no facts or arguments that connect the alleged conflict between himself and counsel over his decision to testify at his co-defendant's entrapment hearing to counsel's alleged ineffectiveness at trial. *See Charette v. Bell,* 106 Fed. Appx. 327, 331-32 (6th Cir. 2004).

Secondly, the denial of petitioner's request for substitute counsel did not violate his constitutional rights to effective assistance of counsel, because petitioner has presented no specific facts showing that his relationship with his court-appointed

counsel had disintegrated into irreconcilable conflict or that communication between petitioner and his court-appointed counsel had broken down irretrievably. *See United States v. Sullivan,* 431 F. 3d 976, 981-82 (6th Cir. 2005); *Mack v. Singletary,* 142 F. Supp. 2d 1369, 1377-78 (S.D. Fla. 2001). In the present case, the facts fail to show an irreconcilable conflict resulting in a total lack of communication which prevented an adequate defense. The state courts' denial of petitioner's claim regarding his motion for substitute counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Lacy v. Lewis*, 123 F. Supp. 2d 533, 551 (C.D. Cal. 2000).

In his fourth claim, petitioner alleges the ineffective assistance of appellate counsel.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F. 2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002)(internal quotations omitted). In fact, winnowing out weaker issues on appeal is actually "the hallmark of effective appellate advocacy." *Id.* (*quoting Smith v. Murray,* 477 U.S. 527, 536 (1986)).

13

Petitioner first contends that appellate counsel was ineffective for failing to raise several ineffective assistance of trial counsel claims on his appeal of right. Assuming that appellate counsel was deficient in failing to raise these claims on petitioner's appeal of right, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims, in light of the fact that these same ineffective assistance of trial counsel claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000); *See also U.S. ex rel. Malone v. Uchtman* 445 F. Supp.2d 977, 989-90 (N.D. Ill. 2006)(petitioner was not prejudiced by appellate counsel's failure to raise claim on direct appeal because, as shown by state post-conviction court's rejection of claim, petitioner would not have fared better if underlying claims had been raised on direct appeal). The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these claims in petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)). In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided. *Gardner*, 817 F. 2d at 189.

Petitioner next contends that appellate counsel was ineffective for failing to request an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211(C)(1) regarding trial counsel's failure to file a

14

motion to suppress evidence or a motion for an entrapment hearing (Claim I, *infra*).

Petitioner is not entitled to habeas relief on this claim for two reasons. First, appellate counsel's decision to raise these two ineffective assistance of trial counsel claims without requesting an evidentiary hearing was a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the trial court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F. 2d 1276, 1280 (6th Cir. 1989). Secondly, because petitioner has failed to show that his ineffective assistance of trial counsel claim had merit, petitioner is unable to establish that appellate counsel was ineffective for failing to seek an evidentiary hearing on his ineffective assistance of trial counsel claims on his appeal of right. *See e.g. Mackenzie v. Portuondo,* 208 F. Supp. 2d 302, 319-20 (E.D.N.Y. 2002)(habeas petitioner did not suffer any prejudice from appellate counsel's allegedly deficient performance at post-trial hearing, where underlying claims lacked merit). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

**B. Claim # 2. Petitioner's Fourth Amendment claim is non-cogizable on habeas review.**

In his second claim, petitioner contends that he is entitled to habeas relief because the evidence obtained from him was the fruit of a warrantless arrest and search.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976);

15

*Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003).

In the present case, petitioner raised his Fourth Amendment claim as part of his ineffective assistance of counsel claim on his direct appeal, which the Michigan Court of Appeals rejected. Under the circumstances, petitioner had a full and fair opportunity to litigate his Fourth Amendment claims and he is therefore barred from seeking habeas relief. *See Atkinson v. Portuondo,* 269 F. Supp. 2d 57, 63 (E.D.N.Y. 2003).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). Therefore, a district court has the power to deny a certificate of appealability *sua sponte. See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *Millender,* 187 F. Supp. 2d at 880. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED***.*

        s/Gerald E. Rosen  
        Gerald E. Rosen  
        United States District Judge

Dated: May 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 30, 2007, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry  
        Case Manager